# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 06-358 |
| JOHN ALDEN SPITZ | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, Suzanne B. Ercole, Assistant United States Attorney, respectfully submits this sentencing memorandum regarding defendant John Alden Spitz who is scheduled to be sentenced on March 8, 2007. For the reasons discussed below, the government respectfully recommends a sentence of imprisonment in the high end of the guideline range of 60-71 months incarceration, and the forfeiture of certain computer equipment, the defendant's automobile and digital camera, which were items used to facilitate and commit the offenses, as set forth in the plea agreement.

## I. INTRODUCTION

On July 19, 2006, a federal grand jury in the Eastern District of Pennsylvania charged the defendant in a two-count indictment with using the internet, telephone and email communications to attempt to induce a minor to engage in sex, in violation of 18 U.S.C. § 2422(b); and travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). On November 8, 2006, the defendant appeared before this Honorable Court and pleaded guilty to both counts of the indictment. The defendant admitted he engaged in sexually explicit communications with a

person he believed to be a 13 year old girl residing in Philadelphia, who in reality was an FBI undercover agent. During these communications the defendant provided pictures of himself and pictures of an adult penis. He also described in sexually graphic detail what his sexual desires were and what he wanted to do sexually to the female. The defendant made arrangements to drive from his residence in Iowa to Philadelphia to meet this girl. The defendant made hotel reservations for himself and the girl for four nights. He purchased a necklace and a tiara for her. The defendant drove 17 hours from Iowa to Philadelphia to meet the girl at the Franklin Mills Mall, at which time he was arrested by the FBI on June 26, 2006. In the defendant's vehicle were the gifts for the girl, a digital camera and condoms.

## II. SENTENCING CALCULATION

### A. Statutory

The maximum sentence that may be imposed for Count One, a violation of 18 U.S.C. § 2422(b), is 30 years imprisonment, with a mandatory minimum of 5 years imprisonment. The maximum term of imprisonment for Count Two is 30 years imprisonment for a violation of 18 U.S.C. § 2423(b).

### B. Sentencing Guidelines

The sentencing guideline range as determined by the United States Probation Office is 57 to 71 months incarceration, which is based upon a total offense level of 25 and a Criminal History category of I . This is calculated as follows:

 (a) base offense level of 24, under § 2G1.3;

 (b) an upward adjustment of 2 levels because the defendant unduly influenced a minor, under § 2G1.3(b)(2);

        (c)      an additional increase of 2 levels because the offense involved the use of a computer, under § 2G1.3(b)(3);

        (d)      3 level downward adjustment for acceptance of responsibility.

However, in light of the statutory mandatory minimum, the applicable range is 60-71 months. The government concurs with this guideline calculation.

## III. RECOMMENDATION

In this case, the Court is required to impose a statutory mandatory minimum sentence of 5 years, or 60 months, on Count One. For the reasons discussed below, the government respectfully recommends that the Court impose a sentence on Spitz which requires the defendant to serve a term of incarceration at the high end of the applicable advisory guideline range of 60-71 months.

### A. The Guideline Range

In imposing sentence, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines. The Third Circuit has confirmed: "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances." U.S. v. Cooper, 437 F.3d 324, 330 (3d Cir 2006). This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. Id.; see also United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (court may continue to determine by a preponderance of the evidence and consider the defendant's relevant conduct in determining the

guideline range). In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before Booker, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker case law, which continues to have advisory force.

United States v. King, 454 F.3d 187, 196 (3d Cir. 2006).

In this case, as stated in the presentence report (PSR), the applicable guideline calculation for the defendant's conviction under both counts of the indictment reflects a total offense level of 25 as set forth above in Section II. Since the defendant's criminal history category is I, a range of 60-71 months incarceration is the proper guideline calculation because the statutory minimum sentence that must be imposed for a conviction under 18 U.S.C. § 2422(b) is 5 years imprisonment. Therefore, the Court must impose a term of imprisonment of at least 60 months.

### B. The Reasonableness of the Applicable Guideline Range

The advisory guideline range carries considerable weight even after Booker. As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range. . . ." Cooper, 437 F.3d at 331. The Court later noted: "The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be." United States v. King, 454 F.3d 187, 195 (3d Cir. 2006), quoting United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006).

The final guideline range is the starting point for determining reasonableness for

three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

(1) The guidelines are much more comprehensive than any other factor set forth under 3553(a). Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing. "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)." United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

(2) The guidelines are the product of years of nationwide experience and sustained study. In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account.

U.S.S.G. App. C.[1] The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. United States v. Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

(3) The correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[2] Congress, the Court, and the guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing. "The only

---

[1] Indeed, the Booker Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Booker, 543 U.S. at 263 (Breyer, J.).

[2] Every opinion in Booker acknowledged the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible. See, e.g., Booker, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

6

way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases. The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide). Measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

The Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[3]

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[4] reversals of sentences imposed within the guideline range have been extraordinarily rare, and have occurred only where the appellate court

---

[3] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. Section 3553(a)(6) focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

[4] See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

found that the district court did not adequately explain the sentence. See, e.g., United States v. Carty, 453 F.3d 1214, 1220-21 (9th Cir. 2006). Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[5]

C. **The § 3553(a) Factors**

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

---

[5] "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). The Third Circuit cited this view with approval in King. Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

The Supreme Court has granted certiorari to further clarify the significance of the Sentencing Guidelines. In United States v. Claiborne, 439 F.3d 479 (8th Cir. 2006), cert. granted, 2006 WL 2187967 (U.S. Nov. 3, 2006), the key issue presented is whether, as stated in these cases, a sentence which constitutes a substantial variance from the guidelines must be justified by extraordinary circumstances. The pendency of this case need not concern the Court here, however, as the government asserts that a sentence within the guideline range is most appropriate in this case, and there is no persuasive basis for any variance. In a second case pending before the Supreme Court, United States v. Rita, 177 Fed. Appx. 357 (4th Cir. May 1, 2006) (per curiam; not precedential), cert. granted, 2006 WL 2307774 (U.S. Nov. 3, 2006), the significant question presented is whether it is consistent with Booker to accord a presumption of reasonableness to within-guidelines sentences. The resolution of that case also is not significant here. The Third Circuit, as opposed to the Fourth Circuit and others, has already made clear that no presumption of reasonableness applies to a guideline range. Cooper, 437 F.3d at 331-32. Thus, the government here does not advocate a guideline sentence based on any presumption, but rather based on the persuasive force of the guidelines and the other considerations of sentencing, as set forth above.

8

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A full review of all pertinent factors supports the conclusion that a within guideline sentence of incarceration at the upper end of the guideline range is appropriate in this case.

### D. Application of the § 3553(a) Factors

In this case, the statutory mandatory minimum requires imposition of at least 5 years incarceration on Count One. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, which in this case is calculated to be 60-71 months incarceration. Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, is best accomplished through faithful application of the guidelines. The government

contends the other 3553(a) factors support a sentence at the high end of the guideline range of 60-71 months.

- Nature and Circumstance of the Offense

The defendant's offenses were serious and reprehensible. His criminal conduct falls squarely within the class of cases to which the applicable guidelines are addressed. Consideration of the nature of the offense, Section 3553(a)(1), supports a higher guideline sentence beyond the statutory mandatory minimum sentence of 60 months required here.

In this case, the defendant, accessing an internet chat room with his home computer, initiated an instant message dialogue with an FBI undercover posing as a 13 year old female. Spitz, believing he was communicating with a 13 year old girl, sent the undercover photographs, including two photographs of an adult penis. In the initial communication the defendant sought the undercover's whereabouts; expressed a desire to meet her and engage in sexual activity; and discussed meeting her in Philadelphia, PA.

In a subsequent communication, the defendant acknowledged the illegality of his conduct and stated, "in some ways I wish you were 18 . . . only that I could date you without stupid laws." Spitz then proceeded to describe in graphic sexually explicit detail what he wanted to do to the girl. He referenced the picture of the penis he previously transmitted, and stated, "well - as soon as I can, I have no problem showing you it in person."

Within two days of these internet dialogues, the defendant advised the undercover that he would travel from Iowa to Philadelphia for a 5 day stay. Not only did Spitz communicate his intentions to induce, entice and coerce, who he believed to be a 13 year old girl to engage in sexual activity - but he deliberately acted on those intentions.

On June 25, 2006, the defendant took a 17 hour automobile trip from Iowa to Philadelphia to meet the "young girl." He brought a tiara and a necklace. He brought condoms and a digital camera. Significantly, he booked four nights at the Hampton Inn, near the place of rendezvous. He told the undercover via email that he represented to hotel management that she (the undercover) was his "niece" who was staying with him because of an "emergency."

Upon his arrest in Philadelphia on June 26, 2006, the defendant admitted to the FBI that his intentions were to engage in sexual activities with the 13 year old. A search of the defendant's car, revealed the gifts, a camera, condoms and a printout from MAP QUEST for travel from Iowa to Philadelphia. In the defendant's car were MAP QUEST directions from Philadelphia to Austin, Texas. In his statement to the FBI, Spitz stated he intended to travel to Texas to meet an adult female who was seeking a boyfriend for her 18 year old daughter, who was disabled with a mental capacity of a 3rd or 4th grade child.

The defendant's criminal conduct reflects that Spitz did not care about the serious consequences of his relationship with a purported minor. His actions of traveling to Philadelphia from Iowa, with gifts, camera and condoms, and arranging for a four night hotel stay with a supposed 13 year old girl, depicts someone who has gone beyond sick fantasy and taken actual steps to fulfill it.

Such conduct requires a term of incarceration beyond the statutory minimum term of incarceration of 60 months.

- The Need for the Sentence Imposed

A within, upper guideline sentence, beyond the statutory minimum of 60 months incarceration, is appropriate to reflect the seriousness of the offense, to promote respect for the

11

law and to provide just punishment for the offense. A sentence at the high end of the applicable guideline range of 71 months protects the very young and the vulnerable, and affords adequate deterrence to the defendant and others would commit similar offenses. Such a sentence sends a forceful message that multiple session sexually graphic communications with a purported 13 year old girl to induce that child to engage in illicit sexual activity, and then traveling 17 hours to carry out those intentions, will be severely punished.

• Other Factors

There are no factors set forth in the presentence report which indicate that incarceration at the high end of the guideline range would be inappropriate. The defendant has fully accepted responsibility for his offense conduct and his remorse has been appropriately taken into consideration with a downward adjustment of 3 levels.

The defendant has not otherwise advanced any persuasive argument for leniency.

The psychiatric report prepared by Catherine Barber, Ph.D, provides a detailed historic picture of Spitz's background as recounted by the defendant. The defendant's state of low self-esteem and avoidant personality traits did not impair his ability to know his conduct was criminal. The defendant's pattern of using the "virtual" Internet world for social interaction may be seductive, but it certainly did not compel him to engage in sordid sexually graphic conversations with a supposed 13 year old. As "disinhibiting" as the Internet may be, this defendant was not prosecuted for "talking dirty." He engaged in multiple session, online conversations with a person he believed was a 13 year old girl to induce the child to engage in sexual activity. He transmitted pictures of himself and an adult penis. As easy as the internet makes it to have such conversations, nothing about the computer made it "easy" for Spitz to get

12

into a car; bring "gifts," camera and condoms; arrange a 4 night stay at a nearby hotel; and drive 17 hours straight from Iowa to Philadelphia just to have sex with a 13 year old. His conduct was planned, calculated and the intentions he so graphically communicated were clearly acted upon. The reality of the "road," is that Spitz drove 17 real hours in very real space with one objective to have physical (not cyber) sex with a 13 year old child.

The Bureau of Prisons offers comprehensive, voluntary sex offender treatment program for eligible prisoners. Dr. Barber indicates that Spitz is insightful and that he acknowledges the nature and seriousness of his offense conduct, thereby making Spitz an excellent candidate. Thus, lengthy incarceration will not bar, but facilitate, and insure appropriate treatment. Accordingly, there is no need in this case to adjust the sentence to provide the defendant with needed educational or vocational training, medical care or other additional treatment. (§ 3553(a)(2)(D))

### IV. CONCLUSION

In summary, all of the appropriate considerations of sentencing support the imposition in this case of a sentence of incarceration beyond the statutory minimum sentence of 5 years. The government respectfully recommends the Court sentence the defendant to a term of incarceration contemplated by the upper guideline range of 71 months. The government

further requests the Court to order the forfeiture of the computer equipment, motor vehicle, and camera as identified in the plea agreement.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____
SUZANNE B. ERCOLE
Assistant United States Attorney



Date: March 5, 2007

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been electronically filed with the Court and served upon defense counsel via facsimile.

       Paul J. Hetznecker, Esquire
       1420 Walnut Street, Suite 911
       Philadelphia, PA 19102
       Fax (215) 893-0255


       _____
       SUZANNE B. ERCOLE
       Assistant United States Attorney

Date: